UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 25-cr-256-TSC-ZMF |
| : | |
| DONISHA BUTLER and : | |
| TERRANCE WILSON, : | |
| : | |
| Defendants : | |

**GOVERNMENT'S RESPONSE TO DEFENDANTS'
MOTIONS FOR EXPUNGEMENT**

The United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, respectfully responds to Defendant Wilson's Motion to Expunge Federal Arrest Warrant (ECF No. 24). Defendant Wilson makes no persuasive argument justifying his extraordinary request for relief. In addition, Defendant Wilson still has a pending case against him in Superior Court based on the same arrest he seeks to expunge. Therefore, the Court should summarily deny Defendant Wilson's motion.[1]

**PROCEDURAL HISTORY**

As relevant here, on August 19, 2025, at around 8:20 p.m., Metropolitan Police Department ("MPD") officers, along with federal agents, were patrolling in the area of the 3400 block of Stanton Road, SE, Washington, D.C. Officers were in the area in reference to possible fireworks and sounds of gunshots. During the patrol, law enforcement encountered an uncooperative and disorderly crowd. Officers attempted to maintain order and gave several verbal commands to individuals to back up while MPD officers conducted a stop of a person other than the Defendant.

---

[1] Defendant Butler filed a Notice of Joinder to the motion (ECF No. 25). The Government does not oppose Defendant Butler's motion.

1

As MPD Officer Leonardo Bell was instructing individuals to move back, the Defendant struck Officer Bell with the Defendant's elbow, making physical contact with Officer Bell. The Defendant then fled but was quickly apprehended and placed under arrest.

The Defendant was initially charged with felony Assault on a Federal Officer (AFO) in violation of 18 U.S.C. § 111(a). He had his initial appearance on August 22, 2025. The Government did not seek his detention. One week later, on August 29, 2025, the Government charged him with misdemeanor AFO via an Information. On September 3, 2025, the Defendant filed a motion to dismiss the case, alleging that the alleged conduct did not constitute a federal offense. *See* ECF No. 16.

On September 18, 2025, the Government moved to dismiss this matter without prejudice and advised the Court that misdemeanor charges relating to the same incident involving the Defendant would be filed in the Superior Court for the District of Columbia. *See* ECF No. 22. The Defendant filed a motion to dismiss the federal charges with prejudice the same day. *See* ECF No. 23. The Court dismissed Defendant Wilson's case without prejudice on September 22, 2025. *See* Sept. 22, 2025, Minute Order. On October 2, 2025, the Government moved to dismiss the case with prejudice. *See* ECF No. 26. The Court did so the next day. *See* ECF No. 27.

On September 25, 2025, the Government filed a case in Superior Court charging the Defendant with misdemeanor Assault on a Police Officer (APO) under D.C. Code § 22-405(b).

## **ARGUMENT**

The Defendant's motion to expunge his arrest in this case should be summarily denied. The Defendant fails to proffer any statutory basis for, or any "extraordinary circumstances" justifying, his request for equitable relief.

2

The Court may order expungement where it is required or authorized by statute, or in exercise of its inherent equitable powers." *United States v. Archer,* 07-cr-0029, 2012 WL 5818244, at *1 (D.D.C. Nov. 13, 2012); *see also United States v. Derouen*, 279 F. Supp. 3d 298, 299 (D.D.C. 2018) (same). In this case, however, the Defendant cites no statutory basis for expungement. There is "no 'standalone right to expungement of government records' [. . .] recognized in this Circuit." *United States v. Douglas*, 282 F. Supp. 3d 275, 278 (D.D.C. 2017) (quoting *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 536 (D.C. Cir. 2015)). This is so "even for government records that are inaccurate, were illegally obtained, or are prejudicial without serving any proper purpose." *Douglas*, 282 F. Supp. 3d at 278 (internal quotation marks omitted). "[I]nstead expungement is a potentially available *remedy* for legally cognizable injuries," *Abdelfattah*, 787 F.3d at 538, that have occurred or are imminent, *Douglas*, 282 F. Supp. 3d at 278. "Before expunging a criminal record, the Court must find that, after examining the particular facts and circumstances of the case, the 'remedy is necessary and appropriate in order to preserve basic legal rights.'" *United States v. Davis*, No. CR. 342-72, 2006 WL 1409761, at *2 (D.D.C. May 23, 2006) (quoting *Livingston v. U.S. Dep't of Justice*, 759 F.2d 74, 78 (D.C. Cir. 1985)).

When a court has exercised its inherent equitable power to order expungement, it has been due to "either a lack of probable cause coupled with specific circumstances, flagrant violations of the Constitution, or other unusual and extraordinary circumstances." *Doe v. Webster*, 606 F.2d 1226, 1230 (D.C. Cir. 1979) (footnotes omitted) *see also, United States v. Blackwell*, 45 F. Supp. 3d 123, 124 (D.D.C. 2014) ("Absent a statutory basis authorizing expungement, courts have granted motions to expunge only in extreme circumstances, such as in cases involving flagrant

constitutional violations. [. . .] [D]ifficulties obtaining additional or advance employment is not regarded as an extreme circumstance."). As former Chief Judge Howell explained:

> Examples of such extraordinary circumstances provided by the D.C. Circuit include criminal records arising from prosecutions marred by entrapment, misleading law enforcement testimony or incorrect legal advice or predicated on a statute subsequently declared unconstitutional. The general rule which emerges from the cases is that expungement of an arrest record is appropriate when serious governmental misbehavior leading to the arrest, or unusually substantial harm to the defendant not in any way attributable to him, outweighs the government's need for a record of the arrest.

*Douglas*, 282 F. Supp. 3d at 278 (citations and quotation marks omitted).

As *Douglas* notes, in addition to considering the circumstances of the arrest and prosecution itself, courts facing expungement requests also consider whether "serious governmental misbehavior leading to the arrest, or unusually substantial harm to the defendant not in any way attributable to him, outweighs the government's need for a record of the arrest," *Davis*, 2006 WL 1409761, at *2. This Circuit is clear that the Government has a "legitimate need for maintaining criminal records in order to efficiently conduct future criminal investigations." *Doe*, 606 F.2d at 1243. "Retaining and preserving arrest records serves the important function of promoting effective law enforcement." *United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977) (quotation omitted); *see also United States v. Woods*, 313 F. Supp. 3d 197, 200 (D.D.C. 2018) ("The government has both the statutory authority to maintain criminal records and a demonstrated need to do so in order to conduct future criminal investigations efficiently.").

The Defendant seeks to expunge his arrest record on the grounds that he "was arrested and charged with a federal crime that he did not commit; and the government recognized as much by suddenly changing course and charging him in Superior Court." *See* ECF No. 24, at 3. However, the circumstances surrounding the Defendant's arrest are distinguishable from the "flagrant

constitutional violations" that have resulted in courts exercising their inherent equitable power to expunge an arrest. In *Tatum v. Morton*, 562 F.2d 1279, 1281-82, 1285 (D.C. Cir. 1977), the district court expunged the arrests of attendants at a peaceful Quaker prayer vigil outside of the White House because the arrests violated the First Amendment. In *Sullivan v. Murphy*, 478 F.2d 938, 968-71 (D.C. Cir. 1973), the D.C. Circuit expunged the mass arrests of protesters of U.S. military involvement in Southeast Asia, where "the police could not have furnished evidence of probable cause if a judicial hearing had been held promptly after apprehension." In *United States v. McLeod*, 385 F.2d 734, 749-50 (5th Cir. 1967), the Fifth Circuit expunged arrest records of and ordered the return of fines collected from a group of civil rights workers who had been arrested and convicted in state courts in an effort to disrupt a voter registration drive. In *Bilick v. Dudley*, 356 F. Supp. 945, 949, 953 (S.D.N.Y. 1973), the court expunged a mass arrest that violated the First Amendment because the arrests were made by police to harass a group due to their political beliefs. In *Hughes v. Rizzo*, 282 F. Supp. 881, 882-83, 885 (E.D. Pa. 1968), the court expunged arrest records that were the result of a campaign by local police to discourage youths from congregating in a public park, where police conducted mass arrests but did not initiate criminal proceedings. And in *Wheeler v. Goodman*, 306 F. Supp. 58 (W.D.N.C 1969), *vacated for reconsideration in light of Younger v. Harris*, 401 U.S. 987 (1971), the court expunged municipal arrest records upon a showing that police had committed repeated constitutional violations while enforcing a state vagrancy law that the court found unconstitutionally overbroad. The court explained that "[w]e do not hold that expunction is appropriate every time a defendant is acquitted or released without prosecution, but on the facts of this case, including the youth of the plaintiffs, their innocence of any crime, the extreme misbehavior of the police in making arrests without

probable cause, and the absence of any benefit to society in the maintenance of the arrest records," expungement was warranted. *Id.* at 66.

Here, police had probable cause to arrest the Defendant for AFO and APO. Indeed, a federal Magistrate Judge signed a complaint charging the Defendant with AFO.

The Defendant asserts that "improper inferences will be drawn" from the record of his arrest. *See* ECF No. 24, at 3. The Defendant does not say what these "improper inferences" are or how expungement of his arrest would mitigate those inferences, especially given that he is being prosecuted in Superior Court for the conduct giving rise to his arrest, and a record of this prosecution would be on his record. Moreover, even an acquittal in Superior Court (which has not happened) would not, standing alone, justify expungement. *See, e.g.*, *United States v. Linn*, 513 F.2d 925, 928 (10th Cir. 1975). It would be extremely odd if the record of his arrest were expunged and he was then convicted in Superior Court. *Compare Sullivan*, 478 F.2d at 964 (explaining that motions to expunge arrest records had not ripened until the prosecution was completed and preventing the dissemination of arrest records in the meantime), *with McLeod*, 385 F.2d at 750 (ordering the expungement of arrests while criminal proceedings designed to suppress the Black vote were pending). Because the Defendant cannot show extraordinary circumstances overcoming the Government's legitimate need to maintain records related to criminal cases, he has not shown entitlement to the relief he seeks.

## **CONCLUSION**

The Defendant's motion fails to present any applicable statutory authority to support his expungement request, show that his arrest was improper, or show any extraordinary circumstances that would warrant expungement when balanced against the Government's interest in preserving

criminal records. The Defendant's justifications do not "rise to the level of the exceptional circumstances necessary to justify this Court's exercise of its equitable power to expunge records of a valid arrest and conviction absent a showing of some violation of rights." *United States v. Wilson*, 98-mj-0558, 2008 WL 2446134, at *1 (D.D.C. June 17, 2008). Accordingly, the Court should summarily deny the Defendant's motion.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: */s/ Solomon S. Eppel*
Solomon S. Eppel
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
solomon.eppel@usdoj.gov